PICKERING, J., dissenting:
I would affirm the district court's decision, which correctly analyzes NRS 604A.480 according to its text and established rules of statutory interpretation.
NRS Chapter 604A regulates the payday and title lending industry. With certain exceptions, Nevada law generally prohibits a lender who is subject to Chapter 604A from issuing a new loan to pay off an existing deferred deposit or high-interest loan. NRS 604A.430(1). Two of those exceptions are set forth in NRS 604A.480, the statute at issue in this appeal.
NRS 604A.480 reads in full as follows:
1. Except as otherwise provided in subsection 2, if a customer agrees in writing to establish or extend the period for the repayment, renewal, refinancing or consolidation of an outstanding loan by using the proceeds of a new deferred deposit loan or high-interest loan to pay the balance of the outstanding loan, the licensee shall not establish or extend the period beyond 60 days after the expiration of the initial loan period. The licensee shall not add any unpaid interest or other charges accrued during the original term of the outstanding loan or any extension of the outstanding loan to the principal amount of the new deferred deposit loan or high-interest loan.
2. This section does not apply to a new deferred deposit loan or high-interest loan if the licensee :
(a) Makes the new deferred deposit loan or high-interest loan to a customer pursuant to a loan agreement which, under its original terms:
(1) Charges an annual percentage rate of less than 200 percent;
(2) Requires the customer to make a payment on the loan at least once every 30 days;
(3) Requires the loan to be paid in full in not less than 150 days; and
(4) Provides that interest does not accrue on the loan at the annual percentage rate set forth in the loan agreement after the date of maturity of the loan;
(b) Performs a credit check of the customer with a major consumer reporting agency before making the loan;
(c) Reports information relating to the loan experience of the customer to a major consumer reporting agency;
(d) Gives the customer the right to rescind the new deferred deposit loan or high-interest loan within 5 days after the loan is made without charging the customer any fee for rescinding the loan;
(e) Participates in good faith with a counseling agency that is:
(1) Accredited by the Council on Accreditation of Services for Families and Children, Inc., or its successor organization; and
(2) A member of the National Foundation for Credit Counseling, or its successor organization; and
(f) Does not commence any civil action or process of alternative dispute resolution on a defaulted loan or any extension or repayment plan thereof.
(emphasis added).
The district court read NRS 604A.480 as permitting two types of arrangements by which a Chapter 604A lender can extend or make a new loan to pay off an existing deferred deposit or high-interest loan. First, the lender can enter into a Subsection 1 agreement by which the "customer agrees in writing to establish or extend the period for the repayment, renewal, refinancing or consolidation of an outstanding loan by using the proceeds of a new deferred deposit loan or *36 high-interest loan to pay the balance of the outstanding loan." If the customer agrees to such an action on an outstanding loan, then what the district court referred to as the "Subsection 1 Prohibitions" apply. The Subsection 1 Prohibitions provide that, as part of an agreement entered into under NRS 604A.480(1), the lender "shall not" (i) "establish or extend the period beyond 60 days after the expiration of the initial loan period" or (ii) "add any unpaid interest or other charges accrued during the original term of the outstanding loan or any extension of the outstanding loan to the principal amount of the new deferred deposit loan or high-interest loan."
Second, the lender and consumer can agree to a new loan that meets the requirements of Subsection 2 of NRS 604A.480. Subsection 2 creates an alternative to a Subsection 1 agreement that avoids the Subsection 1 Prohibitions but imposes additional, different conditions. Under Subsection 2, a lender can offer its borrower a new loan to pay off an outstanding loan-including one as to which the lender and borrower have entered into a failed extension or renewal plan under Subsection 1-without being subject to Subsection 1's single-shot sixty-day limitation or rule against adding unpaid interest from the original loan to the principal of the new loan. See also NRS 604A.430(1)(c) (permitting a $50 fee to be charged for preparing documents in connection with an NRS 604A.480(2) loan). But, to issue a new loan to pay off an existing loan under Subsection 2, the lender must comply with all the conditions precedent listed in the six lettered subparagraphs of Subsection 2. NRS 604A.480(2) ("This section does not apply to a new deferred deposit loan or high-interest loan if the licensee ....") (emphasis added). Each of the lettered subparagraphs is phrased in the present tense, as of the date the lender "[m]akes the new deferred deposit loan or high-interest loan," NRS 604A.480(2)(a), including the condition precedent that the lender "[d]oes not commence any civil action or process of alternative dispute resolution on a defaulted loan or any extension or repayment plan thereof." NRS 604A.480(2)(f). Consistent with its structure and verb tense, the district court concluded:
Subsection 2 contains no prohibition of any kind against a licensee [NRS Chapter 604A licensed lender], but are merely the conditions precedent that must be satisfied for a licensee [lender] to be exempt from the Subsection 1 Prohibitions. NRS 604AA80 therefore contains no prohibition against a licensee from initiating civil suits or alternate dispute resolution proceedings against a debtor that is in default. Rather, NRS 604A.480 only provides that a licensee cannot be exempt from the requirements set forth in NRS 604A.480(1)"if" the licensee has already commenced any civil action or process of alternative dispute resolution against a debtor.
(emphasis added).
The majority takes a different tack. In its view, the purpose of NRS Chapter 604A is to prevent the consumer debt treadmill. Consistent with that perceived purpose, it reads Subsection 2 to require, not just that the lender not have strong-armed the customer-in-default by suing him on the defaulted loan (or any extension or repayment plan thereof) before making the new loan, but that the lender agree, in making the Subsection 2 loan, never to sue on the debt, old or new. But this reading cannot be squared with the text of NRS 604A.480(2) and the verb tenses it employs. Even more fundamentally, it cannot be squared with NRS 604A.415, which authorizes lenders to resort to civil actions to collect loans made under NRS Chapter 604A with no exception for NRS 604A.480(2) loans. Nor does it make common sense: What lender will make a new loan to pay off an existing loan knowing that, in doing so, the loan being made cannot be collected upon default? Is such an arrangement even a loan?
I agree with the district court, which read NRS 604A. 480(2) to require, as one of its several conditions precedent, that the lender not have sued on the defaulted loan being paid off with the proceeds of the NRS 604A.480(2) loan being made. See K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language *37 and design of the statute as a whole.") (Kennedy, J.). This reading is consistent with the statute's text, gives effect to all its terms, and makes practical sense. As I would affirm, not reverse, I respectfully dissent.